UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA      )
                                    )      Case No. 1:13-cr-128-HSM-SKL
v.                              )
                                    )
                                    )
JERRY WAYNE ALEXANDER, JR.      )

## REPORT AND RECOMMENDATION

Before the Court are motions to suppress filed by Defendant Jerry Wayne Alexander, Jr. ("Defendant") seeking suppression of (1) statements made to law enforcement officers on November 4, 2013, because Defendant allegedly neither received warnings of, nor waived, his rights under *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966); and (2) evidence obtained pursuant to a search warrant ("Warrant"), because the Warrant allegedly was issued without probable cause due to staleness [Docs. 125 & 127].[1] After considering the evidence and arguments, I **RECOMMEND** that Defendant's motion to suppress the evidence obtained pursuant to the Warrant [Doc. 127] be **DENIED**. As the government has now conceded that it will not introduce the statements made by Defendant on the day of his arrest during its case-in-chief [Doc. 148], I also **RECOMMEND** that Defendant's motion to suppress his statements to law enforcement officers on the date of his arrest, November 4, 2013 [Doc. 125], be **DENIED AS MOOT**.

---

[1] Both motions to suppress were referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) [Doc. 132]. Defendant filed a separate memorandum in support of his motion to suppress evidence obtained as a result of execution of the Warrant [Doc. 128]. The government filed responses in opposition to the motions [Docs. 138 & 139]. A hearing was held on Defendant's motion to suppress his statements on June 17, 2014. Subsequent to the hearing, the government filed a supplemental response to the motion to suppress statements stating it will not introduce statements made by Defendant on the day of his arrest during its case-in-chief [Doc. 148].

## I.   BACKGROUND

United States Magistrate Judge William B. Mitchell Carter issued the Warrant on November 1, 2013, upon application of the government for a search of 538 Gadd Road, Units A and B, Red Bank, Tennessee.  The search warrant application was supported by the affidavit ("Affidavit") of Special Agent Derek R. Brown ("Agent Brown") of the Drug Enforcement Administration.[2] Defendant was indicted on a charge that he conspired to manufacture and distribute 280 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack") and five kilograms or more of a mixture and substance containing a detectable amount of cocaine [Doc. 3].

## II.   ANALYSIS

### A.   MOTION TO SUPPRESS STATEMENTS

The government submits that it will not introduce statements by Defendant to law enforcement officers on the date of his arrest, November 4, 2013, during its case-in-chief [Doc. 148]. As a result, I **RECOMMEND** that Defendant's motion to suppress his statements to law enforcement officers on November 4, 2013 [Doc. 125], be **DENIED AS MOOT**.

### B.   SEARCH WARRANT MOTION

In his motion, Defendant makes a broad and general claim that his constitutional rights were violated because the Affidavit supporting issuance of the Warrant does not support a finding of probable cause as it is "stale" and lacks indicia of reliability [Doc. 127].  The supporting memorandum addresses staleness, noting "previous searches of the premises had not found any contraband even with closer proximity of reported criminal activity." [Doc. 128 at Page ID # 304]. During the evidentiary hearing on the now mooted motion to suppress his statements, Defendant

---

[2]  The Affidavit is filed in the record [Doc. 127-1].

2

clarified that his sole argument for suppression of evidence obtained during the execution of the Warrant is a claim that the Affidavit did not provide probable cause for the issuance of the Warrant due to staleness.

### 1.  Standards

The Fourth Amendment states, *inter alia*, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.   Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Probable cause is determined by evaluating the information contained within the four corners of the Affidavit supporting the Warrant.  *See, e.g.*, *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (In reviewing the sufficiency of the evidence supporting probable cause, the court is "limited to examining the information contained within the four corners of the affidavit" in light of "the totality of the circumstances."); *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added.").[3]  A showing of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Gates*, 462 U.S. at 244 n.13.

*Gates* adopted a "totality of the circumstances" test for determining whether an affidavit establishes probable cause for the issuance of a warrant. *Id*. at 230.  In making such a determination,

---

[3]  In deciding whether the warrant application contained sufficient facts to support a reasonable belief in probable cause, a court considers the facts set forth in the affidavit and the facts presented during the search warrant proceeding to the issuing judicial officer.  *United States v. Frazier*, 423 F.3d 526, 535-36 (6th Cir. 2005).  There is no suggestion in the record that any facts outside of the Affidavit were presented to Magistrate Judge Carter in this case.

3

great deference is accorded to the issuing magistrate's determination of probable cause. *See, e.g.*, *United States v. Calloway*, 116 F.3d 1129, 1132 (6th Cir. 1997) (determination of probable cause should not be reversed absent clear error). "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). The magistrate must be presented with "sufficient information" to enable him to determine whether probable cause exists; "his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239. An affidavit supporting the issuance of a search warrant should be reviewed "in a commonsense, rather than hypertechnical, manner" to determine probable cause. *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003) (citations omitted) (internal quotation marks omitted).

### 2.    The Warrant

The Affidavit sets forth Agent Brown's expertise and experience in narcotics trafficking investigations, general information about the investigation at issue, and the habits of drug traffickers in general [Doc. 127-1 at ¶¶ 1-4]. The Affidavit details the investigation of a drug conspiracy operated by one of Defendant's co-defendants, Lajeromeny L. Brown ("co-defendant Brown") [*id.* at ¶¶ 5-11]. The Affidavit states co-defendant Brown is managing and/or directing the distribution of heroin and cocaine by Defendant at 538 Gadd Road, Unit B, and is also a source of supply for Alex Smith who resides at 538 Gadd Road, Unit A [*id.* at ¶¶ 5-6]. The Affidavit states it utilized federal and state-authorized intercepts to monitor various phones and other communication devices and used confidential sources and surveillance to gather extensive information about the wholesale and retail drug distribution activities of co-defendant Brown and others [*id.* at ¶¶ 5, 10-21].

4

The Affidavit specifically addresses intercepted communications in July and August of 2013 between co-defendant Brown and Defendant and the resulting surveillance as follows:

14.	On July 30, 2013, at approximately 10:29 am, monitoring agents intercepted an outgoing telephone call from BROWN, who utilized telephone number (423) 637-9996, to telephone number (423) 402-5256, which was later found to be utilized by Jerry Wayne ALEXANDER Jr, date of birth 03/11/1972. During the intercepted and recorded conversation, BROWN told ALEXANDER to look in the driveway and see if he (ALEXANDER) found anything because BROWN had dropped a "four piece" of "grown man."  Based on other intercepts, monitoring agents believed that BROWN was utilizing coded language to refer to an unknown quantity ("four piece") of heroin ("grown man").  At that time, investigating agents were unable to determine the location that BROWN and ALEXANDER were speaking of.

15.	On July 30, 2013, at approximately 2:21pm, monitoring agents intercepted another outgoing call from BROWN to ALEXANDER.  During the intercepted and recorded conversation, BROWN asked ALEXANDER if he was at the "house."  ALEXANDER stated that he was not and that he was driving and was near BROWN's shop (Quantum Automotive, 3410 Campbell Street, Chattanooga, TN). BROWN asked ALEXANDER if he had "anything" with him and ALEXANDER replied that he did not "ride like that." BROWN asked who was at "the spot," and ALEXANDER stated that "Alex" was there.  BROWN stated that he needed to grab some "work" and asked if "Alex" had it. ALEXANDER then told BROWN to go to the residence and call him (ALEXANDER) when he (BROWN) got there and ALEXANDER would tell BROWN where to find "it."

16.	On July 30, 2013, at approximately 2:24pm, monitoring agents intercepted another telephone call between BROWN and ALEXANDER. During the conversation, BROWN told ALEXANDER that he was at the residence, which at that time was still unidentified by investigating agents. ALEXANDER then directed BROWN to go into a bedroom, face the curtains and reach up with his left hand and search the curtains. BROWN responded by saying "Yeah, I got it."

5

17. Based on the coded conversation between ALEXANDER and BROWN, investigating agents believed that BROWN needed to re-supply with either cocaine or heroin and that ALEXANDER instructed BROWN where specifically to find the contraband.

18. On August 13, 2013, at approximately 1:30pm, monitoring agents intercepted an incoming call from ALEXANDER to BROWN. During the conversation, ALEXANDER told BROWN that he (ALEXANDER) had someone who wanted to spend one hundred dollars and asked BROWN if that was a "g." Investigating agents know the term "g" is often utilized by drug traffickers to represent a gram quantity. BROWN confirmed that a "g" cost one hundred dollars, and ALEXANDER asked BROWN if he (BROWN) would go out "there" because the person who wanted to spend the hundred dollars was "sick." BROWN told ALEXANDER that he was on his way. Based on the statement by ALEXANDER that the person who had one hundred dollars was "sick," investigating agents believed that ALEXANDER was requesting that BROWN deliver an unknown quantity of heroin to him (ALEXANDER).

19. On August 13, 2013, at approximately 1:30pm, your Affiant and TBI SA Rodd Watters observed BROWN departing 3410 Campbell Street, Chattanooga, Tennessee in a white Ford pick-up truck bearing Tennessee license plate 293-YBF, which BROWN frequently drives. Your Affiant and SA Watters subsequently followed BROWN to a duplex located at 538 Gadd Road, Red Bank, Tennessee. BROWN pulled into the driveway, which leads to a small parking area in the rear of the duplex. Approximately twenty minutes after arriving, your Affiant and SA Watters observed BROWN pull out of the driveway to 538 Gadd Road. Based on the intercepts and subsequent surveillance, your Affiant believes that BROWN delivered an unknown quantity of heroin to ALEXANDER at 538 Gadd Road.

[*Id.* at ¶¶ 14-19 (reproduced as in original)].

In addition to addressing information regarding Unit A and its occupant, Alex Smith, the

Affidavit also describes information that Defendant was residing at Unit B, that controlled

6

purchases of crack cocaine were made from Defendant at Unit B, and that surveillance of

Defendant at Unit B all occurred in October of 2013 as follows:

32.    On October 8, 2013, Det. Dockery informed your Affiant that he had received information from a RBPD confidential source (CS-2) regarding drug trafficking at 538 Gadd Road. CS-2 is cooperating with RBPD for judicial consideration regarding current criminal charges. Det. Dockery reported that CS-2 identified Jerry ALEXANDER, also known as Junior, as selling cocaine, heroin, and marijuana from the duplex. CS-2 identified ALEXANDER's duplex as the unit on the left, if facing the address side of the duplex. CS-2 further stated that ALEXANDER kept his drugs hidden outside of the residence. CS-2 also reported that Alex SMITH, who resides in the duplex on the right, had offered to sell him/her contraband in the past; however, ALEXANDER has intervened and prevented SMITH from selling to CS-2. CS-2 also reported that after the search warrant execution on October 1, 2013, SMITH and ALEXANDER relocated to a hotel for several days; however, both have returned to the residence confident because no drugs were seized during the search warrant.

33.    On or about October 10, 2013, Det. Dockery conducted surveillance at 538 Gadd Road, Unit B, prior to a controlled purchase of crack cocaine by CS-2 from ALEXANDER in Unit B. Unit B is hereinafter a reference to the duplex on the left, if facing the address side of the duplex. Det. Dockery reported to your Affiant that several times surveillance units observed ALEXANDER walk outside and reach up onto an overhang of the residence and also walk into the wood line behind the residence, where Det. Dockery believes ALEXANDER was retrieving contraband.

34.    Red Bank Police Department investigators conducted a search of CS-2 to ensure that he/she was not in possession of any contraband with negative results. CS-2 was then provided with Red Bank Police Department official funds for the purpose of making a controlled purchase of crack cocaine from ALEXANDER. CS-2, as witnessed by Det. Dockery, entered 538 Gadd Rd, Unit B. CS-2 exited

shortly thereafter and was met by Det. Dockery at a secure location. CS-2 subsequently transferred custody of approximately .8 grams of suspected crack cocaine to Det. Dockery, which he/she had reportedly purchased from ALEXANDER inside 538 Gadd Rd., Unit B, Red Bank, Tennessee. Detective Dockery reported to your Affiant that in his training and experience, the purchased rock like substance was consistent with crack cocaine. The evidence was sent to the Tennessee Bureau of Investigation for analysis and the results are currently pending.

35. On or about October 11, 2013, Det. Dockery utilized CS-2 to conduct a second controlled purchase of crack cocaine from ALEXANDER. RBPD investigators conducted a search of CS-2 to ensure that he/she was not in possession of any contraband with negative results. CS-2 was then provided with RBPD official funds and a concealed recording device for the purpose of making a controlled purchase of crack cocaine from ALEXANDER. CS-2, as witnessed by Det. Dockery, entered 538 Gadd Rd., Unit B. Shortly thereafter, Det. Dockery observed CS-2 walk out of Unit B. Investigator Dockery then met with CS-2, where he took custody of approximately .7 grams of suspected crack cocaine which CS-2 reported to have purchased from ALEXANDER inside 538 Gadd Rd., Unit B, Red Bank, Tennessee. Det. Dockery reported to your Affiant that in his training and experience, the purchased rock like substance was consistent with crack cocaine. The evidence was sent to the Tennessee Bureau of Investigation for analysis and the results are currently pending.

[*Id.* at ¶¶ 32-35 (reproduced as in original). *See also* ¶¶ 25, 27].

**3. Probable Cause**

Defendant contends the Affidavit does not provide probable cause to search Unit B

8

because information contained in the Affidavit was stale.[4]  "Whether information contained in

an affidavit is stale must be determined by the circumstances of each case" and depends not

upon an "arbitrary time limitation"; rather, it depends upon the nature of the crime, the criminal,

the place to be searched, and the evidence to be seized.  *United States v. Spikes*, 158 F.3d 913,

923 (6th Cir. 1998) (citations omitted) (internal quotation marks omitted).  Even when some

information relied upon by the affiant is determined to be stale, probable cause may be present

if the stale information relates to protracted or continuous conduct, or if the stale information

is corroborated by more recent information.  *See United States v. Ursery*, 109 F.3d 1129, 1133

(6th Cir. 1997); *United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988).  Where the

criminal activity is of an ongoing nature, it takes longer for the information to go stale.  *United*

*States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) ("Evidence of ongoing criminal activity will

generally defeat a claim of staleness.  Moreover, where the criminal activity occurred in a

'secure operational base,' the passage of time becomes less significant." (citation omitted)).

        I **CONCLUDE** under the totality of the circumstances that the Affidavit provides a

substantial basis for Magistrate Judge Carter to have reasonably believed a search of

Defendant's Unit B would uncover evidence of wrongdoing.  The Affidavit provides detailed

information showing an informant (i.e., CS-2) had a firsthand basis of knowledge with regard

---

[4]  "Because Fourth Amendment rights are 'personal,' . . . the central inquiry in any
suppression hearing is whether the defendant challenging the admission of evidence has shown a
legitimate expectation of privacy in the place searched or the thing seized." *United States v. King*,
227 F.3d 732, 743 (6th Cir. 2000) (citing *Rakas v. Illinois*, 439 U.S. 128, 140 (1978); *Katz v. United*
*States*, 389 U.S. 347, 353 (1967); *Minnesota v. Olsen*, 495 U.S. 91, 96-97 (1990); *United States v.*
*Kincaide*, 145 F.3d 771, 779 (6th Cir. 1998)).  "Whether a legitimate expectation of privacy exists
in a particular place . . . is a determination to be made on a case-by-case basis." *King*, 227 F.3d at
744.  It appears undisputed that Defendant had a legitimate expectation of privacy in Unit B.

9

to the information provided, and the officers engaged in sufficient corroboration via recent controlled buys. Among other things, the Affidavit alleges illegal drug-related communications involving Defendant were caught on a wiretap in July/August and controlled buys of illegal drugs involving Defendant were made in October, which indicates extensive and continuous criminal activity. The Affidavit provides probable cause to believe Defendant's Unit B was being used as a secure operational base of drug dealing even though the prior execution of a search warrant at Unit B was not fruitful. Information describing controlled purchases of controlled substances from Defendant's Unit B within weeks of the submission of the Affidavit is hardly stale under the totality of the circumstances. I **FIND** the Affidavit provides ample probable cause to believe that drugs and other evidence of drug trafficking would be found in Unit B at the time Agent Brown submitted his Affidavit to Magistrate Judge Carter. *See Spikes*, 158 F.3d at 923-24.

Furthermore, even if, hypothetically, the Warrant were not supported by probable cause, the circumstances demonstrate law enforcement officers had an "objectively reasonable belief" that the Warrant was valid. *See United States v. Leon*, 468 U.S. 897, 918 (1984). I **FIND** the Affidavit is not so deficient, if it has any deficiencies at all, that a reasonable officer would not be justified in relying on the validity of the Warrant. Thus, even if the Affidavit did not support probable cause for the Warrant, the evidence collected would still not be suppressed under the Fourth Amendment because the officers acted in good faith in relying on the Warrant. *See id.*

10

## III.    CONCLUSION

I **RECOMMEND**[5] that Defendant's motion to suppress the evidence obtained pursuant to a search warrant [Doc. 127] be **DENIED** and that Defendant's motion to suppress his statements to law enforcement officers on November 4, 2013 [Doc. 125], be **DENIED AS MOOT** in light of the government's concession that it will not introduce these statements during its case-in-chief.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).